STATE OF NORTH CAROLINA, ON RELATIONSHIP OF THE EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, v. NEWS PUBLISHING COMPANY, NEWS PRINTING HOUSE, INC., CHARLOTTE, NORTH CAROLINA.

(Filed 10 December, 1947.)

**Master and Servant § 59c—**

An employer under the Employment Security Act was engaged in the business of printing and publishing a newspaper and also the business of operating a job printing business as separate businesses with separate books. Thereafter an independent corporation was organized which took over all the assets of the job printing business and retained all the employees of that department. *Held:* The new corporation is not entitled to a

EMPLOYMENT SECURITY COM. *v.* PUBLISHING CO.

*pro rata* transfer to it of the reserve fund. G. S., 96-9 (F) (c) (4) ; G. S., 96-8 (f) (2).

SCHENCK, J., took no part in the consideration or decision of this case.

BARNHILL, J., dissenting.

APPEAL by plaintiff from *Grady, Emergency Judge,* at September Term, 1947, of WAKE.

This is an action to require the plaintiff to transfer a part of the reserve account from one employer to another where the transferee acquires only a part of the business of the transferring employer.

The facts are not in dispute and may be summarized as follows:

1. From 1903 to 1 September, 1946, the News Publishing Company was a corporation operating two separate and distinct departments: (a) One which printed and published *The Charlotte News,* (b) the other a job printing business.

2. The departments were conducted as separate businesses, each having its own books of accounts, pay roll records, personnel, accounts, billheads, bank checks, letterheads, and telephone listings.

3. None of the employees in either of the departments were interchanged from one department to the other.

4. On 1 September, 1946, a newly formed corporation, the News Printing House, Inc., acquired all the assets of the News Publishing Company theretofore used in its job printing department, and retained all the employees in the department as employees of the new corporation.

5. The News Publishing Company was, on 1 September, 1946, and prior thereto had been, an employer subject to the Unemployment Compensation Act (now Employment Security Law) and had paid all tax contributions due upon the wages of its employees in both the publishing and job printing departments.

6. The assets of the job printing department of the News Publishing Company which were transferred to the News Printing House, Inc., 1 September, 1946, amounted to approximately 20% of the total assets of the News Publishing Company. The total taxable wages paid to employees in the job printing department prior to 1 September, 1946, amounted to approximately 16% of the total wages paid by the News Publishing Company to all its employees.

7. The net reserve fund of the News Publishing Company as of 31 July, 1946, was $40,018.77. The defendants desire to have approximately 16% of this reserve fund, to wit, $6,330.27, transferred to the News Printing House, Inc.

The Employment Security Commission of North Carolina held it was without statutory authority to transfer a part of a reserve fund and entered an order denying the request. Upon appeal to the Superior

Court, the court reversed the ruling of the Commission and remanded the cause, directing the Commission to enter an order and determination in accordance with the judgment entered in the Superior Court.

The plaintiff appeals, assigning error.

*W. D. Holoman, Chas. U. Harris, R. B. Overton, and R. B. Billings for plaintiff, appellant.*

*Wm. G. Lassiter for defendant, appellee.*

DENNY, J. The employment experience of the News Publishing Company has been such that the corporation now enjoys a reduced rate of contributions under the provisions of the Employment Security Law. And according to the findings of the Commission, should the judgment of the Superior Court be upheld the News Printing House, Inc., will also be entitled to a similar rate. However, if the statute authorizes the transfer of reserve accounts only in those cases where the entire reserve account is to be transferred, the News Printing House, Inc., will not be entitled to the reduced rate of contributions based on the merit rating of the News Publishing Company. Consequently, the News Printing House, Inc., is interested in securing this reduced rate as well as the transfer of a pro rata part of the reserve fund of the News Publishing Company.

The statute, G. S., 96-9 (F) (c) (4), which provides for the transfer of reserve accounts, reads as follows: "Any individual, group of individuals, or employing unit, who or which acquires the organization, trade, or business of an employer, as provided in section 96-8, subsection (f), paragraph 2, for whom a reserve account has been established and maintained as provided in this chapter, shall immediately notify the commission thereof, and may upon the mutual consent of the parties concerned, and approval of the commission, in conformity with the regulations as prescribed therefor, assume the position of such employer with respect to the resources and liabilities of such employer's reserve account. . . ."

G. S., 96-8 (f) (2), referred to in the above statute, contains the following provisions: " 'Employer' means (2) Any employing unit which acquired the organization, trade, or business or substantially all the assets thereof, of another which at the time of such acquisition was an employer subject to this chapter, or which acquired a part of the organization, trade, or business of another, which at the time of such acquisition was an employer subject to this chapter; provided, such other would have been an employer under paragraph (1) of this subsection, if such part had constituted its entire organization, trade, or business; provided further, that section 96-10, subsection (d), shall not be applicable to an individual or employing unit acquiring such part of the organization, trade, or business."

We think it was the intent of the Legislature in enacting G. S., 96-9 (F) (c) 4, to authorize the transfer of a reserve account only in those cases where an "individual, group of individuals, or employing unit, who or which acquires the organization, trade, or business of an employer . . .'. for whom a reserve account has been established and maintained." It is true that a reference is made to G. S., 96-8 (f) (2), in the statute authorizing the transfer of a reserve fund, and the defendants insist that by this reference the transfer of reserve accounts is not limited to the class of employing units named in G. S., 96-9 (F) (c) 4, otherwise why refer to G. S., 96-8 (f) (2). This necessitates a consideration of the relation of G. S., 96-8 (f) (2), to other pertinent parts of the Employment Security Law. These statutes have not been construed heretofore by this Court, relative to the transfer of reserve accounts by mutual consent of the parties concerned. See *Unemployment Compensation Comm. v. Nissen,* 227 N. C., 216, 41 S. E. (2d), 734.

An "employing unit" is defined in G. S., 96-8 (e), as "any individual or type of organization, including any partnership, association, trust, estate, joint-stock company, insurance company, or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person which has, on or subsequent to January first, one thousand nine hundred and thirty-six, had in its employ one or more individuals performing services for it within this state." While an "employer" is defined in G. S., 96-8 (f) (1), as "any employing unit which in each of twenty different weeks within either the current or the preceding calendar year (whether or not such weeks are or were consecutive) has, or had in employment, eight or more individuals (not necessarily simultaneously and irrespective of whether the same individuals are or were employed in each such week) . . ."

G. S., 96-8 (f) (2), is a definitive statute by which it can be determined whether or not an employing unit which is the transferee of all, substantially all, or a part of an organization, trade, or business of another, is subject to the provisions of the Employment Security Law and required to make the contributions as provided therein.

There are two classes of employing units described in G. S., 96-8 (f) (2). The first is any employing unit which acquires the organization, trade, or business or substantially all the assets thereof, of another which at the time of such acquisition was an employer subject to the Employment Security Law. The other class is any employing unit which acquires a part of the organization, trade, or business of another, which at the time of such acquisition was an employer subject to the Employment Security Law; provided, such other would have been an employer under paragraph (1) of G. S., 96-8 (f), if such part had constituted its entire organization, trade, or business. It will also be noted that in this section

of the statute, the employing unit that acquires only a part of the organization, trade, or business of another is expressly exempted from the lien imposed by G. S., 96-10 (d), on the assets transferred although the former owner may not have paid all the contributions due at the time of the transfer.

We think this exemption is significant. If it had been the intent and purpose of the Legislature in enacting G. S., 96-9 (F) (c) 4, to authorize the transfer of such percentage of the reserve account as the transferred assets bear to the entire assets of the transferor, when only a part of the organization, trade, or business is transferred, then there would be no sound reason for exempting such assets from the provisions of G. S., 96-10 (d).

The assets transferred to the first class of employing units described above are not exempt from the provisions contained in G. S., 96-10 (d). Moreover, G. S., 96-9 (F) (c) 4, provides that "any individual or group of individuals, or employing unit who or which acquires the organization, trade, or business of an employer, as provided in section 96-8, subsection (f), paragraph (2), for whom a reserve account has been established and maintained as provided in this chapter," shall notify the Commission and by mutual consent of the parties concerned, and with the approval of the Commission, the transferee may assume the position of the transferor with respect to the resources and liabilities of such transferor's reserve account.

We think G. S., 96-9 (F) (c) 4, by its own limitation, restricts the transfer of reserve accounts to those cases where the account is to be transferred *in toto;* and even then, such reserve account can be transferred only to such employing unit defined in G. S., 96-8 (f) (2), as may acquire the organization, trade, or business of another for whom a reserve account had been theretofore established and maintained.

The job printing department of the News Publishing Company was not an employer as defined in G. S., 96-8 (f) (1), for whom a reserve account had been established and maintained. The News Publishing Company prior to 1 September, 1946, had been the employer within the meaning of the statute and the reserve account had been established and maintained for it. Hence, we do not think that G. S., 96-9 (F) (c) 4, authorizes the transfer of any part of the reserve fund of the News Publishing Company to the News Printing House, Inc.

The judgment of the court below is reversed and this cause is remanded to the end that judgment may be entered in accord with this opinion.

Reversed.

SCHENCK, J., took no part in the consideration or decision of this case.

BARNHILL, J., dissenting: Here we have a parent corporation conducting two separate and distinct businesses. Another corporation has been formed and it has taken over the assets of the printing business. The Employment Security Commission reserve account has been and still is maintained as a joint account. The parent and subsidiary companies desire now to dissolve this account. The Employment Security Commission held that it was without statutory authority to permit the proposed dissolution of the joint account or the transfer of any part thereof to the subsidiary company. The court below reversed and directed the division or apportionment of the account. Authority for this action, in my opinion, is contained in the first sentence of G. S. 96-9 (F) (c) (4).

The first sentence of that section makes provision for the dissolution of a joint account—the relief defendants seek. The second sentence permits the transfer of a reserve account. These are two different propositions. It seems to me that the majority, in deciding the question presented, gave consideration only to the second sentence of the section and ignored the provisions of the first sentence thereof.

In short, as I view it, the case comes to this: A strict construction of G. S. 96-9 (F) (c) (4), apart from the first sentence thereof, brings the majority conclusion within the strict letter of the law. A liberal construction of the section as a whole, considering the several situations with which it deals, leads to the conclusion that the Commission had statutory authority to permit the dissolution of the joint reserve account —a lack of which authority is the basis of the Commission decision. This construction comes within the spirit, purpose, and intent of the Act.

As I adhere to the latter view, I am of the opinion the court below correctly applied the law to the facts of this case. Hence, I vote to affirm.